UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TARENCE E. EDWARDS, | ) | 1:14CV1175 |
| | ) | |
| Petitioner | ) | |
| | ) | JUDGE DAVID KATZ |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| ALLEN LAZAROFF, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND |
| | ) | RECOMMENDATION |

McHARGH, MAG. JUDGE

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is the petition of Tarence E. Edwards ("Edwards") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of State of Ohio v. Edwards, Case No. 11-CR-000592 (Lake County March 29, 2012).  (Doc. 6, RX 4.)  For the following reasons, the magistrate judge recommends that the petition be denied.

The petitioner Edwards has filed a petition pro se for a writ of habeas corpus, arising out of his 2012 conviction for aggravated robbery, kidnapping, and other

crimes, in the Lake County (Ohio) Court of Common Pleas.  In his petition[1],

Edwards raises three[2] grounds for relief:

> 1.  A trial court's finding that allied offenses were committed with a separate animus violates a criminal defendant's Sixth Amendment right. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 (2006), as applied; Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
>
> 2.  A finding that offenses were committed with a separate animus may only be based on evidence in the record.  Fifth and Fourteenth Amendment[s] to the United States Constitution.
>
> 3.  When the substantial rights of a defendant are violated at trial by the admission of the inculpatory statements of a non-testifying co-defendant, a reviewing court must consider the prejudicial effect of the improperly admitted evidence in light of the record as a whole, not simply whether there was other evidence tending to establish the defendant's guilt.  Sixth and Fourteenth Amendment[s] to the United States Constitution, and Section 10 and 16, Article I of the Ohio Constitution.

(Doc. 1.)

The respondent has filed a Return of Writ (doc. 6), and Edwards has filed a

Traverse (doc. 10).

---

[1]  The petition itself does not state the grounds for relief, merely an indication to "See Attachment."  (Doc. 1, § 12.)  The attachment to the petition states the grounds for habeas relief as recited herein.  (Doc. 1, at [14]-[15]).

[2]  In his Traverse, Edwards abandoned his claim as stated in the first ground. (Doc. 10, at 1.)

2

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals provided the following factual and procedural

background:

> On October 11, 2011, appellant was secretly indicted by the Lake
> County Grand Jury on six counts: count one, aggravated robbery, a
> felony of the first degree, in violation of R.C. 2911.01(A)(1), with an
> accompanying repeat violent offender specification in violation of R.C.
> 2941.149; count two, robbery, a felony of the second degree, in violation
> of R.C. 2911.02(A)(2), with an accompanying repeat violent offender
> specification in violation of R.C. 2941.149; count three, robbery, a
> felony of the third degree, in violation of R.C. 2911.02(A)(3); count four,
> kidnapping, a felony of the second degree, in violation of R.C. 2905
> .01(A)(2), with an accompanying repeat violent offender specification in
> violation of R.C. 2941.149; count five, abduction, a felony of the third
> degree, in violation of R.C. 2905.02(A)(2); and count six, theft, a felony
> of the fifth degree, in violation of R.C. 2913.02(A)(1).  Appellant
> pleaded not guilty to all charges.
>
> A jury trial commenced on February 13, 2012.  At trial, Omar
> Suleiman ("the victim"), owner of Raw Styles in Painesville, Lake
> County, Ohio, testified for appellee, the state of Ohio, that his store
> was robbed by three men on September 24, 2011.  While he was
> getting ready to close for the night, a man the victim knew by the
> name of "Speedy" came in.  Speedy went to a shoe display and asked
> the victim if he could try on a pair of shoes in his size.  As the victim
> was entering the back room, Speedy came behind him with a knife.
> Speedy told the victim it was a "shakedown."
>
> At that point, the victim testified that a second man wearing a skull
> cap and a bandana over his mouth entered the back room.  The second
> man looked familiar to the victim, as he could see his face from
> beneath his nose to the middle of his forehead.  During a struggle
> between the victim and the second man, the victim observed Speedy go
> behind the cash registers.  The second man pushed the victim further
> into the back room, turned him around, held him down, and attempted
> to duct tape his hands behind his back.  The victim heard a third man
> yell, "let's go," and the three men took off running.  The victim pressed
> the store's panic button.  He attempted to chase after the men, but was
> unsuccessful.  After returning to the store, the victim discovered that
> almost $4,000 in cash was taken from the registers.

3

Officer William Smith ("Officer Smith") with the Painesville City Police Department ("PCPD") was dispatched to Raw Styles after learning that three African American male robbers were seen leaving in a white SUV. At the scene, Officer Smith spoke with the victim about the incident. Officer Smith testified for the state that he noticed that the victim was missing hair from his arm. Officer Smith saw a piece of duct tape located on the ground near the registers.

Later that night, the victim was shown two photo line-ups. He identified Lawrence Bolden, a.k.a. "Speedy," in one and Joel Martin ("Martin") in the other. The victim indicated that Martin used to work for him. Warrants were issued for Speedy and Martin. Officers continued to investigate the identity of the remaining suspect.

About a week after the incident, officers spoke with Martin following his arrest. Martin identified Speedy and appellant as being involved in the crime. Detective John Levicki ("Detective Levicki") with the PCPD conducted another photo line-up, this time including a photo of appellant. On October 5, 2011, Detective Levicki met with the victim to administer the photo line-up. The victim identified appellant as the second man with the partially covered face who tried to duct tape him. The victim testified that he was familiar with appellant from past dealings.

About two weeks later, officers spoke with Speedy following his arrest. Speedy admitted to Detective Levicki that he was involved in the robbery at Raw Styles with Martin and appellant. Speedy told officers, as well as testified for the state, that he and Martin were friends and that appellant, who he called "T–Rex," was Martin's nephew. According to Speedy, on the night of the robbery, he went to Martin's house. They smoked crack cocaine and appellant arrived shortly thereafter. Speedy indicated that Martin was upset about being recently fired from Raw Styles. Speedy further stated that appellant was also upset and talked about robbing the store. The three men then devised and set their plan into motion.

Appellant drove his white Lexus SUV with Martin as the front seat passenger and Speedy in the back seat. They parked on a nearby street and entered Raw Styles. Speedy testified that he went into the store and asked the victim if he could try on a pair of shoes. Speedy followed the victim into the back room and pulled a knife on him. According to Speedy, Martin and appellant then ran into the store.

4

Martin went to the cash registers while appellant, who wore a partial face mask, went to the back room and began wrestling with the victim. The three men ran out of the store to appellant's car with cash in hand. After leaving the scene, Martin passed out money to Speedy and appellant.

Thereafter, on November 4, 2011, appellant went to Raw Styles to pay a bill.  After recognizing appellant, the victim pressed the panic alarm. Officer Matt Tycast ("Officer Tycast") with the PCPD testified for the state that he responded to the call.  Officer Tycast arrested appellant and took him into custody.  Appellant later spoke with Detective Levicki.  In a recorded interview admitted at trial over appellant's objection, Detective Levicki informed appellant that two individuals named appellant as being involved in the September 24, 2011 crime. Appellant denied any involvement.

While incarcerated, appellant's jail calls were collected.  A portion of one call between appellant and Yolanda Webber ("Webber"), the mother of appellant's son, was played for the jury, over appellant's objection.  In that call, appellant explained that he felt he needed to get money for Webber.  Webber responded by asking appellant if this was all her fault.  Appellant replied that it was not Webber's fault but rather his own fault for the decisions he had made.

After the state rested, appellant called several witnesses to testify on his behalf, including: Webber, his sisters Fateria and Rebecca Edwards, his cousin Johnny Rivers ("Rivers"), and Rivers' girlfriend Amy Darroch.  Collectively, appellant's witnesses testified that he was at his mother's house and that his white SUV was in Fateria Edwards' possession during the time frame of the robbery.

Following trial, the jury found appellant guilty on all counts.  The trial court deferred sentencing and the matter was referred to the Adult Probation Department for a presentence investigation report and victim impact statement.

At the sentencing hearing, the trial court found appellant guilty of the repeat violent offender specification accompanying count one and found him to be a repeat violent offender.

Pursuant to its April 5, 2012 judgment, the trial court sentenced appellant to a 21–year total prison term.  Specifically, appellant was sentenced to ten years on count one and five years on count four, to run

consecutive to each other.  Counts two, three, and six merged with count one, and count five merged with count four.  The trial court further ordered appellant to serve an additional six years on the repeat violent offender specification, to be served prior to and consecutive to the foregoing prison term.

(Doc. 6, RX 17, at 1-5; State v. Edwards, No. 2012-L-034, 2013 WL 1294635, at *1-

*3 (Ohio Ct. App. Mar. 29, 2013).)

Edwards filed a timely direct appeal, and presented five assignments of error:

1.  The trial court committed prejudicial error and violated Appellant's VI  Amendment right to confront the witnesses against him and the Ohio Rules of Evidence by introducing hearsay statements of co-defendants and others via the introduction of a recorded interview between the police and Appellant.

2.  The trial court committed prejudicial error in permitting the introduction of Appellant's pre-trial denials of guilt.  These statements were not relevant pursuant to Evid. R. 401 and, even if relevant, should have been excluded pursuant to Evid. R. 403(A).

3.  The trial court committed prejudicial error in permitting, over Appellant's objection, the introduction of a brief segment of a jail house tape recorded telephone call between Appellant and Yolander Webber that occurred several months after the crime.

4.  The trial court erred by treating both Aggravated Robbery and Kidnapping as separate crimes for the purposes of sentencing.

(Doc. 6, RX 12.)

5.  The trial court erred in sentencing Appellant to consecutive sentences by using facts not presented to the jury and not found by the jury.

(Doc. 6, RX 13, supplemental brief.)  The court of appeals affirmed the judgment of

the trial court.   (Doc. 6, RX 17; Edwards, 2013 WL 1294635.)

6

Edwards appealed that decision to the Supreme Court of Ohio, setting forth three propositions of law:

> 1.  A trial court's finding that allied offenses were committed with a separate animus violates a criminal defendant's Sixth Amendment right. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 (2006), as applied; Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), followed and explained.
>
> 2.  A finding that offenses were committed with a separate animus may only be based on evidence in the record.  Fifth and Fourteenth Amendments to the United States Constitution.
>
> 3.  When the substantial rights of a defendant are violated at trial by the admission of the inculpatory statements of a non-testifying co-defendant, a reviewing court must consider the prejudicial effect of the improperly admitted evidence in light of the record as a whole, not simply whether there was other evidence tending to establish the defendant's guilt.  Sixth and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

(Doc. 6, RX 20.)  On September 4, 2013, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  (Doc. 6, RX 22; State v. Edwards, 136 Ohio St.3d 1475, 993 N.E.2d 779 (2013).)

Edwards then filed a timely petition for a writ of habeas corpus in this court. (Doc. 1.)


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

8

Edwards has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

The third ground put forward by Edwards alleges violations of the Ohio Constitution.  The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of the Ohio Constitution is not properly before this court.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).


## III.  FIRST GROUND

The first ground of the petition is:  "A trial court's finding that allied offenses were committed with a separate animus violates a criminal defendant's Sixth Amendment right."  In his Traverse, Edwards abandoned his claim as stated in the first ground.  (Doc. 10, at 1, 2-3.)

9

## IV.  SECOND GROUND: ALLIED OFFENSES

The second ground of the petition is:  "A finding that offenses were committed with a separate animus may only be based on evidence in the record."  In his "supporting facts," Edwards argues that "the Sixth Amendment right to a jury trial prevents the judge from acting as finder of fact with respect to the second step of the Johnson[3] allied offense analysis."  (Doc. 1, at [15].)  Edwards asserts that, because the trial record:

> . . . did not establish that the duct tape was purposefully brought to the scene, the trial judge's use of its "recollection" of evidence and testimony establishing that fact from a co-defendant's trial to justify that the kidnapping was committed with a separate animus from the robbery was prejudicial and denied Mr. Edwards his right to due process and also violated the Double Jeopardy Clause.

(Doc. 1, at [16].)

The respondent states that "Edwards generally challenges the determination that the two offenses (aggravated robbery and kidnapping) were found to be allied offenses."  (Doc. 6, at 20.)  The respondent contends that such a claim is a state law issue, which is not cognizable in habeas.  Id.

The court would point to an additional problem.  On direct appeal, Edwards presented his fourth assignment of error to the state court of appeals as follows: "The trial court erred by treating both Aggravated Robbery and Kidnapping as separate crimes for the purposes of sentencing."  (Doc. 6, RX 12, at 15.)  In state

---

[3]  Referring to *State v. Johnson*, 128 Ohio St.3d 153, 942 N.E.2d 1061 (2010).

10

court, Edwards presented the issue for review and argument, thus: "Did the trial court err in determining that the presence of the duct tape without proof that it had been brought to the crime scene constitutes proof of a separate animus sufficient to prevent a merger of the crimes." Id.

Edwards' focus on direct appeal in state court, then, was somewhat different. He did not focus on the trial judge's alleged fact-finding as to the role of the duct tape. In fact, Edwards argued on appeal, while still stating his view that there was a lack of evidence that Edwards had brought the duct tape to the scene, "assuming Appellant did bring the duct tape[,] the use of the duct tape to restrain a victim of his liberty . . . is no different than bringing a firearm to restrain a victim of his liberty by threat of physical harm." (Doc. 6, RX 12, at 16.) Edwards argued that state case law showed that the presence of a firearm during a robbery and kidnapping would not support the finding of a separate animus. Id.

On direct appeal, Edwards did not present the argument he presents now, namely, that the trial judge's alleged consideration of evidence outside the record was a violation of his due process rights. Instead, his claim on appeal was summarized as:

> There was no evidence presented during either trial that the perpetrators brought duct tape as opposed to finding it there. Assuming it was brought, however, does not constitute a separate animus. The fact that their considerations included bringing duct tape, assuming they did, is no more significant than their bringing a knife or, indeed, a firearm. Aggravated Robbery and Kidnapping are under these facts allied offenses of similar import and Appellant should have been sentenced to only one offense.

11

(Doc. 6, RX 12, at 17.)  Edwards did not present to the state court the claim he presents here[4], a due process violation based on the trial judge's allegedly improper fact-finding.

It is well-settled in the Sixth Circuit that the threshold issue of exhaustion of state remedies can be raised by the court sua sponte.  Richards v. Money, No. 1:03CV1532, 2005 WL 1181856, at *5 (N.D. Ohio May 18, 2005) (citing Clinkscale v. Carter, 375 F.3d 430, 436-437 (6th Cir. 2004); Harris v. Rees, 794 F.2d 1168, 1170 (6th Cir. 1986)); see also Alexander v. Eberlin, No. 1:06CV1664, 2007 WL 2902899, at *5 (N.D. Ohio Sept. 28, 2007) (same).

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  This court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly

---

[4]  In his Traverse, Edwards shifts his focus once again, this time to a Double Jeopardy  argument, based on *Blockburger v. United States*, 284 U.S. 299 (1932). (Doc. 10, at 3-4.)  However, Edwards cannot present new grounds in his Traverse. *See, e.g.*, *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005), *cert. denied*, 547 U.S. 1074 (2006) (citing cases); *Jenkins v. Welch*, No. 4:09CV637, 2010 WL 1948297, at *15 (N.D. Ohio Apr. 26, 2010).  Additionally, as discussed earlier, his argument on direct appeal presented to the state court was based on state law concerning "allied offenses," not a federal Double Jeopardy claim.  *See generally* doc. 6, RX 12, at 19-21. Although the petition mentions the Double Jeopardy Clause in passing (doc. 1, at [16], that issue is not addressed in his argument.  *See generally* doc. 1, at [15-[16].

presented to the state courts.  Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001)

The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."  Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998); see also Brandon v. Stone, No. 06-5284, 2007 WL 786330, at *1 (6th Cir. March 15, 2007) (citing Williams v. Bagley, 380 F.3d 932, 969 (6th Cir. 2004)); Jalowiec v. Bradshaw, No. 1:03CV0645, 2008 WL 312655, at *24 (N.D. Ohio Jan. 31, 2008), aff'd, 657 F.3d 293 (6th Cir. 2011), cert. denied, 133 S.Ct. 107 (2012).  That the factual basis for the theories is related would not save the claim.  Lott v. Coyle, 261 F.3d 594, 607 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002).  Those issues which were not fairly presented to the state courts cannot be considered here. Baldwin , 541 U.S. at 29; Jacobs, 265 F.3d at 415.  The argument as presented by Edwards in the second ground of his petition was not fairly presented to the state courts, and cannot be the basis for habeas relief.

Notwithstanding that, the respondent's argument has merit as well.  The petition argues that Edwards should be have been sentenced differently if the crimes were properly recognized as "allied offenses," thus, he argues that Ohio state law was improperly applied.  (Doc. 1, at [15]-[16].)  As respondent points out, doc. 6, at 20, this is a state law issue which cannot be the basis for federal habeas relief.

The state court of appeals analyzed Edwards' claim under the Ohio "allied offenses of similar import" statute[5], rather than under the Double Jeopardy Clause utilizing the Blockburger test.  See Doc. 6, RX 17, at 13-19; Edwards, 2013 WL 1294635, at *8-*11.  The issue for this court, then, would be whether the state court's decision was contrary to clearly established federal law, as determined by the Supreme Court of the United States.  Williams, 529 U.S. at 412-413.  A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.

The Double Jeopardy Clause of the Fifth Amendment protects a defendant from multiple punishments for the same offense.  Missouri v. Hunter, 459 U.S. 359, 366 (1982) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).  "The applicable rule is that where the same act or transaction constitutes a violation of

---

[5]  The Supreme Court of Ohio's interpretation of Ohio's "allied offenses of similar import" statute (Ohio Rev. Code § 2941.25) has undergone considerable variation over the years.  *See generally State v. Anderson*, 974 N.E.2d 1236, 1242 (Ohio Ct. App. 2012) ("the test used to determine whether two allied offenses are subject to merger has expanded and contracted in 'accordion-like' fashion over the 38 years since enactment of the multiple-counts statute").  *See, e.g.*, *State v. Earley*, — Ohio St. 3d —, 2015 WL 6887528, at *3 (Nov. 10, 2015) ("lead opinion in *Johnson* did not receive the support of a majority of this court, and more recent decisions of the court have rendered the analysis of the *Johnson* lead opinion largely obsolete"); *State v. Ruff*, 143 Ohio St.3d 114, 34 N.E.3d 892 (2015) (revisiting holding of *Johnson*); *State v. Johnson*, 128 Ohio St.3d 153, 153, 942 N.E.2d 1061, 1062 (2010) (overruling *Rance*); *State v. Rance* 85 Ohio St.3d 632, 633, 710 N.E.2d 699, 700 (1999) (overruling *Newark v. Vazirani*, 48 Ohio St.3d 81, 549 N.E.2d 250 (1990)).  The court of appeals in this case relied on *Johnson*, which reflected current Ohio law as of the date of its decision.  (Doc. 6, RX 17, at 15; *Edwards*, 2013 WL 1294635, at *9.)

14

two distinct statutory provisions, the test to be applied . . . is whether each provision requires proof of a fact which the other does not."  Blockburger v. United States, 284 U.S. 299, 304 (1932); see also United States v. Dixon, 509 U.S. 688, 696 (1993) ("whether each offense contains an element not contained in the other").

"The Blockburger test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial."  Illinois v. Vitale, 447 U.S. 410, 416 (1980); see also United States v. Dudeck, 657 F.3d 424, 428 (6th Cir. 2011) (proof necessary to establish statutory elements) (citing Vitale).  The two distinct statutory provisions involved here each require proof of a fact which the other does not.  See generally Blockburger, 284 U.S. at 304.  A conviction for aggravated robbery requires having a deadly weapon on or about the offender's person, or under his control.  Ohio Rev. Code § 2911.01(A)(1); see also Ohio Jury Instr. § 511.01(A).  A conviction for kidnapping does not require the "deadly weapon" element.  See generally Ohio Rev. Code § 2905.01(A)(2).

On the other hand, a conviction for kidnapping requires the removal of another from the place where the other person is found, or the restraint of that person's liberty.  Ohio Rev. Code § 2905.01(A)(2); see also Ohio Jury Instr. § 505.01(A).  A conviction for  aggravated robbery does not require the "removal" or "restraint" element.  See generally Ohio Rev. Code § 2911.01(A)(1).

Therefore, Edwards' convictions for aggravated robbery and kidnapping present no constitutional violation of the Double Jeopardy Clause under the

Blockburger analysis.  Blockburger, 284 U.S. at 304; see also Floyd v. Marshall, 538 F.Supp 381, 385 (N.D. Ohio 1982); Heard v. Jago, 515 F.Supp. 162, 166 (S.D. Ohio 1981) (no double jeopardy issue because aggravated robbery and kidnapping each require proof of evidentiary fact not required by the other).

Although Ohio's "allied offenses of similar import" statute is apparently intended, in part, to alleviate double jeopardy concerns, State v. Johnson, 128 Ohio St.3d 153, 162, 942 N.E.2d 1061, 1069 (2010), the analysis under that state statute is rather different than that required by Blockburger and related U.S. Supreme Court precedent.  The "allied offenses" analysis was summarized by the Johnson court as follows:  "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."  Johnson, 128 Ohio St.3d at 153, 942 N.E.2d at 1062 (syllabus) (overruling Rance, 85 Ohio St.3d 632, 710 N.E.2d 699).

The focus on the statutory elements of the offense distinguishes the U.S. Supreme Court's double jeopardy jurisprudence from Ohio law construing Ohio's "allied offenses of similar import" statute.  In Dixon, the U.S. Supreme Court reaffirmed the "same elements" test established in Blockburger, and rejected a "same conduct" test, "which looked past the statutory elements of a charged offense to the particular facts the government intended to prove in the challenged prosecution."  United States v. Basciano, 599 F.3d 184, 197-198 (2d Cir. 2010) (citing Dixon, 509 U.S. at 696, 704).  In the second step of the analysis under the

16

"allied offenses of similar import" statute, Ohio's focus on the "conduct of the accused," see, e.g., Johnson, 128 Ohio St.3d at 153, 942 N.E.2d at 1062 (syllabus), and "not whether it is possible to commit one [offense] without committing the other," Johnson, 128 Ohio St.3d at 162-163, 942 N.E.2d at 1070, takes the issue outside the Blockburger test used in the U.S. Supreme Court's double jeopardy jurisprudence.

Under Blockburger, the test is "whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304; see also Dixon, 509 U.S. at 696. The Blockburger test focuses on the proof necessary to prove the statutory elements of each offense. Vitale, 447 U.S. at 416; see also Dudeck, 657 F.3d at 428. Thus, analysis under Ohio's "allied offenses of similar import" statute is properly an issue of state law, and is not appropriate for this court's habeas review.

As determined earlier, the court finds Edwards' convictions for aggravated robbery and kidnapping present no constitutional double jeopardy violation under the Blockburger analysis, because each offense contains an element not contained in the other. Blockburger, 284 U.S. at 304; see also Dixon, 509 U.S. at 696; Floyd, 538 F.Supp at 385; Heard, 515 F.Supp. at 166. Although the state court denied Edwards' claim using a different analysis, based on state law, the state court's adjudication upholding Edwards' convictions did not result in a decision that was contrary to clearly established federal law.

17

The petition should not be granted on the basis of the second ground.

## V.  THIRD GROUND

The third ground of the petition is:

> When the substantial rights of a defendant are violated at trial by the admission of the inculpatory statements of a non-testifying co-defendant, a reviewing court must consider the prejudicial effect of the improperly admitted evidence in light of the record as a whole, not simply whether there was other evidence tending to establish the defendant's guilt.

(Doc. 1, at [16].)  Edwards argues that, although the state court of appeals found that the trial court's limiting instruction was insufficient to cure the impact of the co-defendant's statements, the court applied "harmless error" review to the Bruton violation "in name only."  (Doc. 1, at [16].)

> Edwards raised the issue on direct appeal as his first assignment of error:

> The trial court committed prejudicial error and violated Appellant's VI Amendment right to confront the witnesses against him and the Ohio Rules of Evidence by introducing hearsay statements of co-defendants and others via the introduction of a recorded interview between the police and Appellant.

(Doc. 6, RX 12.)  Actually, the disputed "statements" were not direct statements, but rather the police detective's representations during the November 7, 2011, interview of Edwards that "other people say you did it."  (Doc. 6, RX 12, at 3.)

The November 7 interview was played at trial, over objection.  (Doc. 6, RX 6, tr., at 254, 256-257, and RX 29 (interview transcript).)  The detective repeatedly represents to Edwards that "people named you as being involved" (doc. 6, RX 29, at

18

6), and "both the people that were involved with the crime implicated you" (RX 29, at 13).  See also RX 29, at 14, 15, 17.

The court of appeals addressed his claim by noting that he alleged both a violation of the Ohio Rules of Evidence (which is a state law claim, not before this court) and a violation of his constitutional right to confront witnesses.  (Doc. 6, RX 17, at 6; Edwards, 2013 WL 1294635, at *4.) This court will focus on the latter (constitutional) issue.

The state court noted that the Sixth Amendment guarantees an accused the right to be confronted with the witnesses against him, and that the Confrontation Clause bars testimonial statements of a witness who did not appear at trial, unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.  (Doc. 6, RX 17, at 7; Edwards, 2013 WL 1294635, at *4, quoting Crawford v. Washington, 541 U.S. 36, 53-54 (2004).)  The court continued:

> The threshold inquiry is whether the challenged out-of-court statements were testimonial in nature and needed to be tested by confrontation.  See State v. Lewis, 1st Dist. Nos. C–050989 and C–060010, 2007–Ohio–1485, ¶ 30.  Statements are "testimonial when the circumstances objectively indicate that there is no * * * ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution." Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); see also State v. Stahl, 111 Ohio St.3d 186, 855 N.E.2d 834, 2006–Ohio–5482, paragraph one of the syllabus.
>
> Confrontation Clause violations are subject to harmless error analysis.  See State v. Kraft, 1st Dist. No. C–060238, 2007–Ohio–2247, ¶ 67, citing United States v. Summers, 414 F.3d 1287, 1303 (10th Cir.2005).  "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt." State v. Conway, 108 Ohio

19

St.3d 214, 842 N.E.2d 996, 2006–Ohio–791, ¶ 78, citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

(Doc. 6, RX 17, at 7-8; Edwards, 2013 WL 1294635, at *4.)

The appellate court found that the trial court should not have allowed into evidence that portion of a videotape where a detective stated that Edwards' co-defendants and unnamed "others" implicated him in the crime.  (Doc. 6, RX 17, at 9; Edwards, 2013 WL 1294635, at *5.)  The court noted that one of his co-defendants had testified at trial; however, the other had not (and the "others" were unidentified), thus "these testimonial statements are barred by the Confrontation Clause and their admission violated appellant's Sixth Amendment rights."  (Doc. 6, RX 17, at 10; Edwards, 2013 WL 1294635, at *6, citing Crawford and Davis.)

The trial court had provided a limiting instruction to the jury, but the court of appeals noted that most testimonial statements are too damaging for a lay juror to separate or ignore.  (Doc. 6, RX 17, at 10; Edwards, 2013 WL 1294635, at *6.) The court noted that the introduction of statements of co-defendants, which have not been subject to cross, deprives a defendant of his Sixth Amendment right to confrontation.  (Doc. 6, RX 17, at 10; Edwards, 2013 WL 1294635, at *6, discussing Bruton v. United States, 391 U.S. 123 (1968), and related cases.)

The court pointed out that merely finding a Bruton violation does not automatically compel reversal, and that Bruton violations are subject to harmless error review.  (Doc. 6, RX 17, at 11; Edwards, 2013 WL 1294635, at *6.)  The court quoted from State v. Moritz, 63 Ohio St.2d 150, 156, 407 N.E.2d 1268 (1980), that:

20

> In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission [or statements] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.

(Doc. 6, RX 17, at 11; Edwards, 2013 WL 1294635, at *6.)

The court's subsequent "harmless error" review consisted of the following, as expressed in the court's opinion:

> Based on the facts of this case, the limiting instruction alone was not enough to cure the Bruton violation because the jury had already heard the testimonial statements of Detective Levicki that appellant's co-defendants and "others" said that appellant committed the crime. Courts should be mindful that such testimonial statements may be too damaging for a lay juror to separate and/or ignore.  However, the Bruton violation did not prejudice appellant as there was other evidence of his guilt.  See e.g. [State v. Holdsworth, No. 90-P-2231, 1992 WL 35040, at *4-*5 (Ohio Ct. App. Feb. 21, 1992)].  The facts in the case before us are not sufficient given the overwhelming evidence of guilt properly before the jury.  Thus, the trial court's error was harmless.  Id.

(Doc. 6, RX 17, at 11; Edwards, 2013 WL 1294635, at *6.)

The court's decision to cite Holdsworth is somewhat curious, although not dispositive in this habeas context.  In Holdsworth, the defendant was convicted of a robbery which occurred six years earlier.  The court of appeals pointed out that the victim had testified that she was unable to identify the robber, who she described as "wearing a dark ball cap, a three-cornered scarf which was tied over his face, and dark clothing."  Holdsworth, 1992 WL 35040, at *1.  The court noted that "the only evidence implicating the appellant was [an accomplice's] testimony recounting codefendant Shields' statements."  Id. at *5.  The court found that "appellant was

21

prejudiced as there was no other evidence of guilt, overwhelming or otherwise," and the trial court should have granted separate trials to avoid the confrontation problem.  Id.  The Holdsworth court's Bruton analysis did not find that there was overwhelming evidence of guilt, nor did the court find the error to be harmless.

Be that as it may, where a court finds a Confrontation Clause violation, that is a trial error  subject to a harmless error analysis.  See, e.g., Jensen v. Romanowski, 590 F.3d 373, 379 (6th Cir. 2009); Vasquez v. Jones, 496 F.3d 564, 574 (6th Cir. 2007).  The Supreme Court has affirmed that a federal habeas court must assess the prejudicial impact of constitutional trial error under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).  Fry v. Pliler, 551 U.S. 112 (2007).

Under Brecht, the petitioner has to establish that a trial error had a "substantial and injurious effect or influence in determining the jury's verdict," in order to obtain habeas relief.  Brecht, 507 U.S. at 637-638; see also Ruelas v. Wolfenbarger, 580 F.3d 403, 411 (6th Cir. 2009), cert. denied, 560 U.S. 924 (2010).  To meet this standard, there must be more than the "reasonable possibility" that the error contributed to the jury's verdict.  Billingslea v. Jackson, No. 02-1225, 2003 WL 22905326, at *7 (6th Cir. Nov. 21, 2003); Mitzel v. Tate, 267 F.3d 524, 534 (6th Cir. 2001), cert. denied, 535 U.S. 966 (2002) (citing Brecht, 507 U.S. at 637).

Even where the state court applied harmless error review, the habeas court reviews the constitutional error under Brecht, and does not address the issue as

whether the state court unreasonably applied Chapman v. California, 386 U.S. 18 (1967) (which governs harmless error review on direct appeal).  Bauberger v. Haynes, 632 F.3d 100, 104-105 (4th Cir.), cert. denied, 132 S.Ct. 189 (2011); Ruelas, 580 F.3d at 411-412.  The Supreme Court has clarified that a habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman. Fry, 551 U.S. at 121-122 (internal citations omitted); see also Ruelas, 580 F.3d at 411 (citing Vasquez, 496 F.3d at 575).

There are a number of factors a court may consider in analyzing whether a Confrontation Clause error was harmless or not:

> These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); Jensen, 590 F.3d at 379; Stallings v. Bobby, 464 F.3d 576, 582 (6th Cir. 2006).  After considering these factors, the court concludes that even if there was constitutional error as to the Confrontation Clause, it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637-638.

Edwards contends that the state court's harmless error review was perfunctory and inadequate.  He argues that the "harmless error standard requires the reviewing court to 'declare a belief that the (constitutional error) was harmless beyond a reasonable doubt,' before holding the constitutional error harmless." (Doc. 1, at [16], quotation unattributed.)  Edwards states that, had the court of appeals "engaged in the correct harmless error analysis under Chapman, it would not have found the constitutional error harmless."  (Doc. 1, at [16].)  As noted earlier, however, this habeas court reviews the constitutional error under the 'substantial and injurious effect' standard of Brecht, not under the 'harmless beyond a reasonable doubt' standard of Chapman.  Fry, 551 U.S. at 121-122.

Edwards argues that the strongest evidence against him at trial "was the testimony of a co-defendant who received a significant benefit to testify to what Detective Levicki told him[,] and co-defendant Joel Martin's out-of-court statements identifying Mr. Edwards as the masked man involved in the robbery..." (Doc. 1, at [16].)  Edwards argues that, even if the victim had been impeached for his belated identification, and even if another co-defendant (Speedy) had been discredited, "there was no possible way to [rebut] Detective Levicki's comments and testimony repeating Mr. Martin's out-of-court statements identifying Mr. Edwards as the masked suspect..." (Doc. 1, at [17].)

24

The respondent argues that the contested evidence at issue is the police detective's statement[6] in Edwards' interview tape that "others" had implicated him in the robbery.  (Doc. 6, at 41.)  The respondent contends that, when this "brief statement" is viewed against the strong evidence offered by the state (see doc. 6, at 34-41), it is clear that the error in admitting the detective's statement is harmless. (Doc. 6, at 41.)

In considering whether Confrontation Clause error was harmless or not, the court considers several factors.  Van Arsdall, 475 U.S. at 684.  The first is the importance of the testimony to the prosecution's case.  The prosecution did not directly use Martin's alleged out-of-court statement as evidence against Edwards. It simply arose during the playing of the interview tape.  Later, in closing, the prosecutor stated as follows:  "On October 2nd, 2011, Joel Martin is arrested and interviewed.  After that interview, what does Det. Levicki do?  Puts the Defendant into a photo lineup."  (Doc. 6, RX 7, tr., at 449.)  The implication is that Martin said something which caused the police to view Edwards as a suspect.  In light of the other evidence at trial, it cannot be said that Martin's alleged out-of-court statement was important to the prosecution's case.

---

[6]  The court points out that respondent's characterization of the disputed comments as a "brief statement" does not accurately reflect the detective's repeated representations  that "people named you as being involved," "both the people that were involved with the crime implicated you," and other similar statements.  (RX 29, at 6, 13, 14, 15, 17.)

The detective's statement that "others" had implicated Edwards in the robbery was also made during the interview of Edwards, in an attempt to convince him to confess.  The detective had admitted, before the jury, that he occasionally lied to an accused during an interview, "to give them the impression I have more evidence."  He admitted he sometimes used a lie as "a trick just to get them to give me information."  (RX 6, tr., at 257-258.)  It is unknown, of course, whether the jury viewed the reference to "others" as credible evidence against Edwards, despite the judge's limiting caution, or whether they viewed the detective's statement that others had implicated Edwards as a tactical lie to attempt to trick Edwards into confessing.

There was direct evidence in support of the jury's verdict that Edwards committed the crime.  The victim-store owner identified Edwards.  He testified at trial that the face of the second person[7] seemed familiar to him at the time of the robbery, but "I didn't know by name, what his name was."  (Doc. 6, RX 5, Trial tr., at 92.)  The victim was shown a photo line-up, one photo folder at a time, and identified Edwards' photograph as the second person involved in the robbery.  (Doc. 6, RX 5, Trial tr., at 98-99; see also doc. 6, RX 6, tr., at 249-251.)  The victim testified that he was familiar to him, because Edwards had visited the store often.  (RX 5, tr., at 99.)

--------

[7]  Initially, the victim had a name ("Speedy") for the first person involved in the robbery, but did not have a name for the second person who entered the store, and assaulted him in the back room.

26

The victim testified that Edwards was wearing a "skully," which covered part of his face, "didn't cover more than his mouth," but he was able to see the majority of his face.  (RX 5, tr., at 84-85.)  According to the victim, the mask left the face exposed from the middle of the forehead to just beneath his nose.  (RX 5, tr., at 85.)

At a later date, when Edwards was in the store again, the victim recognized him as the person who had robbed him, the person he had picked out in the photo lineup, so he called the police.  (RX 5, tr., at 103-104.)  The victim also identified Edwards in the courtroom as the person who robbed his store, and the person he had identified through the photo lineup.  (RX 5, tr., at 99, 104.)  The victim was cross-examined by counsel for Edwards.

Edwards concedes, however, that the strongest evidence against him at trial was the testimony of his co-defendant.  (Doc. 1, at [16].)  Co-defendant Lawrence Bolden ("Speedy") was arrested, and agreed to cooperate in an interview with police. They discussed who was involved in the robbery, and the names discussed were consistent with his courtroom testimony.  (Doc. 6, RX 6, tr., at 252.)  Bolden testified at Edwards' trial in detail about Edwards' active participation in the robbery.  (Doc. 6, RX 6, tr., at 192, 195-206.)  He was cross-examined by counsel for Edwards.

Both the key prosecution witnesses, then, were cross-examined by defense counsel.  It was the jury's role to judge the credibility of the prosecution witnesses, as well as the alibi witnesses called by the defense.

The court concludes that even if there was constitutional error as to the Confrontation Clause, it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637-638.


## RECOMMENDATION

The petition for a writ of habeas corpus should be denied.


Dated:   Apr. 6, 2016            /s/ Kenneth S. McHargh
                                 Kenneth S. McHargh
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).